IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JORGE PETER CORNELL, | ) | 1:11CR402-1 |
| also known as "King J" and "King Jay"; | ) | 1:11CR402-2 |
| RUSSELL LLOYD KILFOIL, | ) | 1:11CR402-14 |
| also known as "King Peaceful" and | ) | |
| "Jonathan Hernandez"; and | ) | |
| ERNESTO WILSON, | ) | |
| also known as "Yayo", | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion for New Trial [Doc. #301] filed by

Defendants Jorge Cornell ("Defendant Cornell"), Russell Kilfoil ("Defendant Kilfoil"), and

Ernesto Wilson ("Defendant Wilson"), (collectively, "Defendants") pursuant to Rule 33 of the

Federal Rules of Criminal Procedure. Also before the Court is a Second Motion for Judgment

of Acquittal [Doc. #311] filed by Defendant Wilson, only, pursuant to Rule 29 of the Federal

Rules of Criminal Procedure. The Motions are fully briefed and are ready for the Court's

review. For the reasons set forth below, the Court will deny both Motions.

I.    BACKGROUND

Defendants Cornell, Kilfoil, and Wilson, along with eleven (11) co-defendants were

charged in Count 1 of a Superseding Indictment with Conspiracy to Conduct or Participate in

a Racketeering Enterprise in violation of 18 U.S.C. § 1962(d). Defendant Cornell was also

charged in two additional counts as follows: in Count 2 with Violent Crime in Aid of Racketeering, and aiding and abetting the same, in violation of 18 U.S.C. § 1959(a)(3) and § 2, and in Count 3 with Carry and Use of a Firearm During and in Relation to a Crime of Violence, and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A) and § 2. On October 15, 2012, a trial commenced in this case for Defendants Cornell, Kilfoil, and Wilson, and four co-defendants, Carlos Coleman, Randolph Kilfoil, Samuel Velasquez, and Irvin Vasquez.[1] On November 21, 2012, after hearing evidence for approximately one month, the jury, by special verdict sheet, found Defendants Cornell, Kilfoil, and Wilson guilty of Count 1 of the Superseding Indictment, and also found Defendant Cornell guilty of Counts 2 and 3 of the Superseding Indictment.[2] Defendants Cornell, Kilfoil, and Wilson now raise challenges related to the jury instructions and special verdict sheet used in this case, and have filed a Motion for New Trial based on those challenges. In addition, Defendant Wilson challenges the sufficiency of the evidence against him in this case and has filed a Second Motion for Judgment of Acquittal to that effect. The Court will address each Motion in turn.

---

[1] Prior to the start of trial, six (6) co-defendants, Luis Rosa, Wesley Williams, Stephan Acencio-Vasquez, Marcelo Ysrael-Perez, Charles Moore, and Richard Robinson, entered guilty pleas to Count 1 of the Superseding Indictment. In addition, another co-defendant, Jason Yates, was severed from the October 15, 2012, trial following a Motion to Withdraw by his counsel on October 9, 2012.

[2] At the close of the Government's evidence on November 13, 2012, the Court granted the oral Motion of Defendant Carlos Coleman for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and dismissed the case against Defendant Carlos Coleman. Thereafter, on November 21, 2012, the jury acquitted Defendants Randolph Kilfoil, Samuel Velasquez, and Irvin Vasquez of the sole count against each of them, that is, Count 1 of the Superseding Indictment.

## II.    MOTION FOR NEW TRIAL

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In their Motion for New Trial, Defendants Cornell, Kilfoil, and Wilson raise challenges related to the jury instructions and the special verdict sheet provided to and used by the jury in this case. Specifically, Defendants challenge the Court's use of, and the jury's response to, Question 1(b) of the special verdict sheet, which relates to the RICO conspiracy charged in Count 1 of the Superseding Indictment. Question 1(b), which the Court directed the jury to answer only after it found a Defendant guilty of Count 1, instructed the jury as follows:

> If you found Defendant [(Name)] guilty of Count 1, you must have found, beyond a reasonable doubt, that at least two acts of racketeering were either planned or committed by some member of the conspiracy. Those acts may be either of the same or different types, or a combination of both. Please indicate on the next page which type or types of racketeering activity you unanimously have found were committed or intended to be committed by members of the racketeering conspiracy that Defendant [(Name)] joined. If you find that no acts of a particular type of racketeering activity were committed or intended to be committed, check "No Acts" for that type. If you find that a single act of a particular type of racketeering activity was committed or intended to be committed, check "Single Act" for that type. If you find that multiple acts of a particular type of racketeering activity were committed or intended to be committed, check "Multiple Acts" for that type. However, if you find that a particular act was committed or intended to be committed by some member of the conspiracy, you may attribute that act to only one type of racketeering activity listed below.

Based on the evidence presented at trial, the types of racketeering acts listed on the special verdict sheet were conspiracy to commit murder, attempted murder, robbery, extortion, arson, narcotics trafficking, interference with commerce by threats or violence, bank fraud, and theft from an interstate shipment.[3]  In rendering its verdict, the jury provided identical responses to

---

[3]  Although alleged in the Superseding Indictment, the Court excluded from the jury instructions and the special verdict sheets any reference to kidnaping as a type of racketeering act that the jury could consider due to a lack of evidence regarding any such racketeering act.

Question 1(b) for each of Defendants Cornell, Kilfoil, and Wilson, as follows:

| | No Act | Single Act | Multiple Acts |
|---|---|---|---|
| Conspiracy to Commit Murder | _____ | ___✓___ | _____ |
| Attempted Murder | _____ | ___✓___ | _____ |
| Robbery | _____ | _____ | ___✓___ |
| Extortion | ___✓___ | _____ | _____ |
| Arson | ___✓___ | _____ | _____ |
| Narcotics Trafficking | ___✓___ | _____ | _____ |
| Interference with Commerce by Threats or Violence | _____ | ___✓___ | _____ |
| Bank Fraud | _____ | _____ | ___✓___ |
| Theft from an Interstate Shipment | ___✓___ | _____ | _____ |

Defendants first challenge the manner in which the Court presented Question 1(b), and any accompanying jury instructions, to the jury. Specifically, Defendants contend that because the Court listed only the types, or categories, of racketeering acts on the special verdict sheet, rather than the specific racketeering acts addressed at trial, there exists a "serious risk" that "in completing the verdict sheet for a category[,] . . . the jury [was not] unanimous as to which predicate act in that category . . . it was assigning responsibility for a defendant." (Defs.' Mot. for New Trial at 2, 5 [Doc. #301]). Defendants further challenge the jury's response to Question 1(b), contending that the identical responses to Question 1(b) exhibit the jury's

"evident confusion" with the jury instructions and special verdict sheet in this case. (Defs.' Mot. for New Trial at 2, 4 [Doc. #301]). More specifically, Defendants contend that "the only way that the jury could have found identical predicate acts for each of the convicted defendants would be for the jury to ignore the instructions to consider the defendants individually and to base its verdict on the notion that each member of the conspiracy was responsible for all predicate acts that the jury concluded involved the enterprise." (Defs.' Mot. for New Trial at 3, [Doc. #301]). As such, Defendants appear to contend that the jury improperly used what Defendants refer to as an "enterprise responsibility approach" in rendering its verdict, noting that based on the identical verdict sheets, "it cannot be determined that the jury found that [each Defendant's] participation in the conspiracy embraced the particular predicate acts found by the jury." (Defs.' Mot. for New Trial at 4, 5 [Doc. #301]).

In support of their contentions regarding the jury's response to Question 1(b), Defendants note that prior to rendering its verdict, the jury asked the Court, in essence, whether the jury should check off racketeering acts under Question 1(b) which they found the enterprise conducted. The Court, after discussing the issue with and obtaining consent by all counsel, declined to answer the question directly and, instead, referred the jury to the instructions previously given. Defendants contend that based on the jury's identical responses to Question 1(b), the jury was evidently confused about how to answer Question 1(b) after posing its question to the Court. Defendants contend that the jury's confusion is highlighted by their response to Question 1(b) on the verdict sheet for Defendant Wilson. Specifically, Defendants contend that the Government presented evidence at trial which, when taken in the light most

favorable to the Government, showed that Defendant Wilson participated in a series of criminal acts in April of 2007. However, Defendants contend that the Government presented no evidence "that Mr. Wilson remained in North Carolina after May of 2007 or that he had any further contact with the other persons that the Government alleged were members of the conspiracy in this case." (Defs.' Mot. for New Trial at 3, [Doc. #301]). Nevertheless, Defendants contend that, by its response to Question 1(b), the jury found Defendant Wilson "responsible for conspiracy to commit murder, attempted murder, interference with commerce by threats or violence and multiple acts of bank fraud," which acts did not occur, if at all, until 2008. (Defs.' Mot. for New Trial at 3, [Doc. #301]). As such, Defendants contend that "the jury must have completed the predicate act portion of the verdict sheet by holding Mr. Wilson responsible for any act they attributed to the enterprise." (Defs.' Mot. for New Trial at 3, [Doc. #301]). Defendants further contend that the confusion exhibited by the jury's response to Question 1(b) for Defendant Wilson extends to the jury's response to Question 1(b) for Defendants Cornell and Kilfoil. Based on these concerns regarding the jury instructions and the verdicts in this case, Defendants contend that the interest of justice requires a new trial for each of Defendants Cornell, Kilfoil, and Wilson.

In considering Defendants' Motion for New Trial, the Court notes that Defendants appear to base their concerns with the jury instructions and special verdict sheet on the assumption that, in order to convict a particular Defendant under 18 U.S.C. § 1962(d), the jury was required to, or in fact did, unanimously find that particular Defendant responsible for committing specific racketeering acts himself. However, based on the following, the Court finds

that such an assumption is not supported by the law.  In that regard, the Court notes that Defendants were not charged with the substantive RICO violation of conducting or participating in the affairs of an enterprise through a pattern of racketeering activity under 18 U.S.C. § 1962(c).  In other words, Defendants were not charged with, and, therefore, were not convicted of, committing individual racketeering acts.  Rather, Defendants were charged with, and convicted of, *conspiracy* to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity under 18 U.S.C. § 1962(d).  A RICO conspiracy is a crime separate from a substantive RICO violation, and such a conspiracy "may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself."  United States v. Salinas, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L. Ed. 2d 352 (1997); United States v. Glecier, 923 F.2d 496, 501 (7th Cir. 1991) (noting that the separate crime of conspiracy "centers on the act of *agreement*" (emphasis in original)).

Noting the distinction between a substantive RICO violation and a conspiracy to violate the RICO statute, courts, including the Fourth Circuit Court of Appeals, have held that a charge of conspiracy to violate RICO does not require proof of any overt act or proof that a charged defendant committed or agreed to commit any predicate racketeering act himself.  United States v. Mouzone, 687 F.3d 207, 218 (4th Cir. 2012) ("Notably, . . . a defendant can conspire to violate RICO and violate § 1962(d) without 'himself committ[ing] or agree[ing] to commit the two or more' acts of racketeering activity." (quoting Salinas, 522 U.S. at 65, 118 S. Ct. at 478)); United States v. Hein, 395 Fed. App'x 652, 656 (11th Cir. 2010) ("[Section 1962(d)] requires

violators to knowingly join a conspiracy that violates the substantive part of the statute but does not require [proof of] 'overt acts, nor specific predicate acts that the defendant agreed personally to commit.'" (quoting <u>Glecier</u>, 923 F.2d at 500)). "Rather, simply agreeing to advance a RICO undertaking is sufficient." <u>Mouzone</u>, 687 F.3d at 218. In other words,

> [a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.

<u>Salinas</u>, 522 U.S. at 64-65, 118 S. Ct. at 477 (noting further that a person "may be liable for conspiracy even though he was incapable of committing the substantive offense"). Moreover, even where a defendant does not commit any racketeering act himself, "a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence,' and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." <u>Smith v. United States</u>, 133 S. Ct. 714, 719, 184 L. Ed. 2d 570 (2013) (citing <u>Hyde v. United States</u>, 225 U.S. 347, 369, 32 S. Ct. 793, 56 L. Ed. 2d 1114 (1912) and <u>Pinkerton v. United States</u>, 328 U.S. 640, 646, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)). Further, in contrasting substantive RICO violations and RICO conspiracies several courts have expressly found that in the case of a RICO conspiracy the jury need only be unanimous as to the type or types of racketeering activity that were committed or intended to be committed by some member of the conspiracy. <u>See</u> <u>United States v. Randall</u>, 661 F.3d 1291, 1297-99 (10th Cir. 2011); <u>United States v. Applins</u>, 637 F.3d 59, 80-82 (2d Cir. 2011); <u>Hein</u>, 395 Fed. App'x at 655-56 ("'[Defendants'] argument that the jury had to unanimously agree on particular and individual acts and not just the general types of predicate offenses is not supported by the law and was

thus not required in a jury instruction.").

Based on the foregoing, to the extent that Defendants contend that the Court erred by instructing the jury that it must be unanimous as to which types of racketeering acts, as opposed to which specific racketeering acts, it found were committed or intended to be committed by a member of the racketeering conspiracy, the Court finds that the law does not support Defendants' position. Accordingly, Defendants' concern that Question 1(b), and the associated jury instructions, creates a "serious risk" that the jury lacked unanimity with regard to which specific predicate acts the jury found within each category, such concern is unfounded since the law does not require unanimity as to specific predicate acts. Furthermore, to the extent that Defendants contend that the jury exhibited "evident confusion" with the jury instructions by "holding the convicted defendants responsible for all acts in which the jury apparently found the enterprise had engaged," (Defs.' Mot. for New Trial at 5, [Doc. #301]), the Court finds that Defendants' contention ignores the distinction between a RICO conspiracy and a substantive RICO violation and misconstrues the effect of the jury's verdict.

As noted above, a defendant need not commit or agree to commit any predicate acts himself to be found guilty of a RICO conspiracy. The *agreement* to join a conspiracy, the object of which is the commission of two or more predicate acts, is, in itself, the criminal act. Furthermore, once a defendant joins a conspiracy, his criminal liability persists until such time as he affirmatively withdraws from the conspiracy, or the conspiracy ends, even if the defendant never commits or agrees to commit any specific racketeering acts himself during that relevant time period. In light of these principles, the Court instructed the jury in the present case that

to find a Defendant guilty of the RICO conspiracy charged in Count 1 of the Superseding Indictment, the jury had to find that the Government proved each of the following essential elements beyond a reasonable doubt as to each Defendant:

> (1) that an enterprise existed, as charged in the Superseding Indictment; (2) that the enterprise was engaged in or its activities affected interstate or foreign commerce; (3) that the Defendant was employed by or associated with the enterprise; and (4) that the Defendant knowingly and willfully became a part of the conspiracy to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity, as described in the Superseding Indictment, that is, that the Defendant or some other member of the conspiracy would commit at least two acts of racketeering activity.

As to the fourth element noted above, the Court further instructed the jury, in relevant part, as follows:

> [T]he focus of this element is on each Defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the Defendant's agreement to commit individual criminal acts. The Government must prove that each Defendant participated in some manner in the overall objective of the conspiracy and that the conspiracy involved, or would have involved, the commission of two racketeering acts. The Government is not required to prove that the Defendant himself personally committed two racketeering acts or that he agreed to personally commit two racketeering acts.

> You are further instructed that the Government is not required to prove that the Defendant knew all of the other conspirators, or that he agreed with each of them to violate the law. Instead, the focus of this Count is on each Defendant's own agreement to join or remain in the conspiracy charged. What is important is that the Government prove beyond a reasonable doubt that the Defendant knowingly adopted the goal of furthering or facilitating the criminal endeavor or, in other words, the Defendant knew generally about the pattern of racketeering activity and agreed to facilitate the racketeering scheme in some manner and not that the Defendant himself committed the crimes encompassing the pattern of racketeering activity.

Furthermore, with regard to the special verdict sheet used in the present case, the Court instructed the jury to first answer Question 1(a) for each Defendant, indicating therein whether the jury found the particular Defendant at issue guilty or not guilty of Count 1 of the

Superseding Indictment.  Only if the jury found a Defendant guilty in Question 1(a) did the jury move on to answer Question 1(b).  Under Question 1(b), the Court instructed the jury to indicate the type or types of racketeering acts which the jury unanimously found were committed or intended to be committed *by some member of the conspiracy that the Defendant joined*. The Court did not instruct, nor would the law require an instruction, that the jury must unanimously find that any particular Defendant committed any of the types of racketeering acts listed in Question 1(b).  Therefore, by finding a Defendant guilty in Question 1(a), the jury necessarily found that the Defendant joined the conspiracy charged in Count 1 of the Superseding Indictment.  Once the jury found that a Defendant joined the conspiracy, the jury properly could, and did, indicate in Question 1(b) the type or types of racketeering acts it found were committed or intended to be committed by some member of that conspiracy, even if that person was not the Defendant charged.  As such, the jury verdicts for each of Defendants Cornell, Kilfoil, and Wilson do not indicate that any Defendant was responsible for committing, himself, any of the types of racketeering acts listed in Question 1(b), nor do the jury verdicts convict any Defendant of any type of or specific racketeering acts.  Rather, the jury verdicts indicate that Defendants Cornell, Kilfoil, and Wilson joined, and remained in, the same RICO conspiracy, and that some member of that same conspiracy committed or intended to commit the types of racketeering acts set forth in Question 1(b).

Using Defendant Wilson's verdict sheet to further illustrate the point, the Court notes, as discussed in more detail below, that the Government presented sufficient evidence from which a reasonable jury could find that Defendant Wilson committed certain racketeering acts

himself, namely, certain acts of robbery and interference with commerce by threats or violence. Considering such evidence, in addition to all other evidence adduced at trial, a reasonable jury could find Defendant Wilson guilty of the RICO conspiracy charged in Count 1 of the Superseding Indictment. Furthermore, that reasonable jury could properly consider such evidence to partially answer Question 1(b), in that such a jury could find that some member of the conspiracy that Defendant Wilson joined, in this case Defendant Wilson himself, committed or intended to commit certain acts of robbery and interference with commerce by threats or violence. However, it would not be inconsistent, either with relevant law or the jury instructions provided by the Court, for that same jury to *also* indicate in Question 1(b) the types of racketeering acts that were committed or intended to be committed by some *other* member of the conspiracy that Defendant Wilson joined. In this case, Defendant Wilson presented no evidence that he affirmatively withdrew from any conspiracy that he may have joined at any point prior to the conspiracy's conclusion.[4] Therefore, the jury in this case did not have the

---

[4] "Once it has been established that a defendant has participated in a conspiracy, the defendant's membership in that conspiracy is presumed to continue until he withdraws from it by affirmative action." United States v. Manning, 462 Fed. App'x 345, 347 (4th Cir. 2012). "[S]imply ceasing participation in the conspiracy does not constitute 'withdrawal.'" United States v. Harris, 695 F.3d 1125, 1137 (10th Cir. 2012). Rather, withdrawal requires proof that "the defendant [took] affirmative actions inconsistent with the object of the conspiracy and communicate[d] his intent to withdraw in a manner likely to reach his accomplices." United States v. Cardwell, 433 F.3d 378, 391 (4th Cir. 2005); United States v. West, 877 F.2d, 281, 289 (4th Cir. 1989) ("Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy."). Furthermore, the burden of proving withdrawal from a conspiracy rests exclusively with the defendant. Smith, 133 S. Ct. at 719. To the extent that a defendant proves withdrawal to the satisfaction of the jury, such "[w]ithdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy." Id. Defendant Wilson did not raise a withdrawal defense at trial and did not request that the Court instruct the jury on withdrawal. Moreover, Defendant Wilson does not

question of withdrawal before it at the time it rendered a verdict against Defendant Wilson. As such, once the jury found that Defendant Wilson joined the conspiracy alleged, which it did by finding Defendant Wilson guilty in Question 1(a), the jury properly indicated in Question 1(b) all of the types of racketeering acts committed or intended to be committed by members of that same conspiracy, continuing up to the point when that conspiracy concluded.

The same general principles discussed with regard to Defendant Wilson apply to Defendants Cornell and Kilfoil. In that regard, the Court notes that Defendants Cornell and Kilfoil do not challenge the sufficiency of the Government's evidence in any post-trial Motion currently before the Court. Furthermore, the Court previously denied Defendant Cornell's and Defendant Kilfoil's oral Motions for Judgment of Acquittal based on the sufficiency of the Government's evidence at the close of the trial evidence. The Court finds no basis to reconsider its denials of those oral Motions at this time. As such, the Court again finds that the Government presented sufficient evidence from which a reasonable jury could find that both Defendants Cornell and Kilfoil knowingly and wilfully joined a conspiracy to conduct or participate in the affairs of the Latin Kings enterprise through a pattern of racketeering activity. Therefore, to the extent that the jury found that Defendant Cornell and Defendant Kilfoil joined the RICO conspiracy charged in Count 1 of the Superseding Indictment, which the jury did by finding Defendants Cornell and Kilfoil guilty in Question 1(a) of their respective jury

---

appear to contend that the Court should have provided the jury with an instruction as to withdrawal in either his Motion for New Trial or his Second Motion for Judgment of Acquittal. Therefore, the subject of withdrawal was never presented to the jury for consideration. As such, the jury properly considered evidence related to the conspiracy itself up to its conclusion.

verdict sheets, the jury properly indicated in Question 1(b) of each verdict sheet all of the types of racketeering acts committed or intended to be committed by members of the conspiracy that Defendants Cornell and Kilfoil were found to have joined.

Again, the Court notes that the jury's response to Question 1(b) for each of Defendants Cornell, Kilfoil, and Wilson does not indicate that the jury convicted either Defendant Cornell, Defendant Kilfoil, or Defendant Wilson of any type of or specific racketeering act in this case. Rather, the jury's response to Question 1(b) indicates that the jury found that each of the Defendants joined a conspiracy to conduct or participate in the affairs of the Latin Kings enterprise and some member of that same conspiracy committed or intended to commit the types of racketeering acts listed on the special verdict sheet during the course of that conspiracy. Therefore, based on all of the information before the Court, the Court finds that the jury's response to Question 1(b) for each of Defendants Cornell, Kilfoil, and Wilson comports with the law set forth above, and with the instructions provided by the Court, and does not evidence the jury's confusion about either.[5] As such the Court finds no reason to grant a new trial in this case for any of the convicted Defendants and, therefore, Defendants' Motion for New Trial will

---

[5] To the extent that Defendants contend that the jury was somehow confused by the Court's decision to answer the jury's question about Question 1(b) by directing the jury to refer to the Court's prior instructions, the Court notes that it conferred with counsel for all parties prior to addressing the jury in open court and all parties agreed that the proper response was to tell the jury to refer back to the Court's previous instructions. Furthermore, the Court specifically informed the jury that it could again approach the Court with any additional questions the jury may have as such questions arose. The jury did not ask any further questions prior to rendering its verdict. Therefore, the Court finds Defendants' contentions regarding jury confusion in this regard to be unfounded.

be denied.[4]

## III.   SECOND MOTION FOR JUDGMENT OF ACQUITTAL

In addition to joining the Motion for New Trial, discussed above, Defendant Wilson, has separately filed a Second Motion for Judgment of Acquittal[5] challenging the sufficiency of the Government's evidence against him pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29 Motion").  "A defendant challenging the sufficiency of the evidence faces a heavy burden."  United v. Foster, 507 F.3d 233, 245 (4th Cir. 2007). The Court will uphold a jury verdict if, "viewing the evidence in the light most favorable to the government, [the verdict] is supported by substantial evidence." United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008).  "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. Palacios, 677 F.3d 234, 248 (4th Cir. 2012) (quotations omitted). Furthermore, in considering whether there exists substantial evidence, the Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

---

[4] To the extent that Defendant Cornell contends that justice also requires a new trial on Counts 2 and 3 of the Superseding Indictment, such contention stems from the assumption that the conviction in Count 1 is infirm.  However, as noted above, the Court finds no basis to grant Defendant Cornell a new trial as to Count 1 and, therefore, the Court will also deny Defendant Cornell's Motion for New Trial as to Counts 2 and 3.

[5] Defendant Wilson made a Motion for Judgment of Acquittal pursuant to Rule 29 at the close of the Government's evidence, and renewed such Motion at the close of all evidence. The Court denied his Motion each time.

In his Rule 29 Motion, Defendant Wilson contends that even in the light most favorable to the Government, the evidence adduced at trial fails to show that Defendant Wilson was anything more than a "mere associate" of the enterprise alleged and further fails to show that Defendant Wilson joined the RICO conspiracy alleged. Specifically, Defendant Wilson contends that the Government presented no evidence that Defendant Wilson was ever a member of the Latin Kings, that he ever wore the colors or emblems associated with the Latin Kings, or that he attended any official meetings of the Latin Kings. Furthermore, to the extent that the Government's evidence shows that Defendant Wilson was an associate in fact of the Latin Kings enterprise, Defendant Wilson contends that his participation was limited to a series of unplanned and unrelated robberies committed for Defendant Wilson's personal agenda of making money and not committed to further any alleged purpose of the Latin Kings enterprise. As such, Defendant Wilson contends that the Government failed to present sufficient evidence that Defendant Wilson was an associate of the Latin Kings enterprise and that he knowingly and wilfully joined a conspiracy to conduct or participate in the affairs of the Latin Kings enterprise through a pattern of racketeering activity.

In considering Defendant Wilson's Rule 29 Motion, the Court notes that Defendant Wilson correctly states that "mere association" with an enterprise is not sufficient to meet the elements of a RICO conspiracy. Mouzone, 687 F.3d at 218 ("We caution that the RICO conspiracy statute does not 'criminalize mere association with an enterprise.' Rather, as with the traditional conspiracy, criminal liability will attach only to the knowing 'agreement to participate in an endeavor which, if completed would constitute a violation of the substantive

statute.'" (citations omitted)).  The Court instructed the jury of the same, stating, in relevant part, as follows:

> The RICO conspiracy statute does not criminalize mere association with the enterprise. In addition to knowingly associating with the specific enterprise alleged in the Superseding Indictment, the Government must prove beyond a reasonable doubt that each Defendant knowingly agreed to participate in the furtherance of the overall purpose or objective of the RICO conspiracy.

However, the Court finds that the Government presented sufficient evidence from which a reasonable jury could find that Defendant Wilson was more than a "mere associate" of the Latin Kings enterprise and, further, that Defendant Wilson knowingly and willfully joined a conspiracy to conduct and participate in the affairs of that enterprise through a pattern of racketeering activity.

Over the course of the trial in this case, several witnesses testified that Defendant Wilson came from New York to live with his friend, Defendant Cornell, the Inca of the North Carolina Latin Kings, for a period of time in 2007.  The house in which Defendant Cornell and Defendant Wilson lived ("the Keeler house") was also home to Anthony Vasquez, a then crown-holding member of the Latin Kings.  Furthermore, Anthony Vasquez, and other witnesses, testified that Defendant Wilson and certain Latin Kings members committed a series of crimes in March and April of 2007, all of which began and/or ended with the participants meeting at the Keeler house.  For example, Anthony Vasquez testified that "the Kings" robbed a business called the $2.50 Cleaners after planning to do so at the Keeler house earlier that same day.  Anthony Vasquez testified that Defendant Wilson, Defendant Cornell, and Latin Kings members Luis Rosa, Allan Jordan, and Steaphan Acencio-Vasquez were present at the planning

of the robbery.[6]  Anthony Vasquez further testified that Defendant Cornell provided the participants with .380 caliber handguns for use during the robbery.  (Anthony Vasquez Testimony, Vol. 1, 49:9-52:19, [Doc. #273]).  Luis Rosa testified that he participated in the robbery of the $2.50 Cleaners with Defendant Wilson and that after the robbery occurred, the participants, including Defendant Wilson, returned to the Keeler house, where they split the proceeds among themselves and with Defendant Cornell. (Luis Rosa Testimony, 50:21-58:8, [Doc. #271]).  Luis Rosa and Allan Jordan also testified that they committed several other armed robberies with Defendant Wilson, including the armed robberies of a music store called Musica Latina, a laundromat called Xpress Laundry, and a grocery store called El Tarahumara. In each instance, the participants, including Defendant Wilson, canvassed the location for a brief period of time prior to commission of the robbery, and in each instance, the participants returned to the Keeler house to split the proceeds of the robbery among themselves and with Defendant Cornell.  (Luis Rosa Testimony, 42:8-48:12, [Doc. #271]; Allan Jordan Testimony 30:19-44:25, [Doc. #272]).

In addition, Luis Rosa testified about the planning and commission of a breaking and entering at the Cornerstone Insurance Company.  Specifically, Luis Rosa testified that while at the Keeler house, Defendant Cornell told Luis Rosa and Defendant Wilson about a place where they could get "quick money."  Specifically, Luis Rosa testified that Defendant Cornell told Defendant Wilson and Luis Rosa that he knew a woman who had worked at Cornerstone

---

[6] Luis Rosa and Steaphan Acencio-Vasquez are co-defendants in the present case.  Both entered guilty pleas to Count 1 of the Superseding Indictment.

Insurance Company,[7] and that he knew that if Defendant Wilson and Luis Rosa went to the location at night, they would find a blue bag filled with money in one of the desk drawers and would not encounter any other people. In addition, Luis Rosa testified that Defendant Cornell described where Defendant Wilson and Luis Rosa should park for an easy getaway and what would trigger the security alarm. Luis Rosa further testified that he, Defendant Wilson, and two Latin Kings members broke into the Cornerstone Insurance Company building, found the bag of money in one of the desk drawers, and left with that money after Defendant Wilson triggered the security alarm. Thereafter, the participants, including Defendant Wilson, returned to the Keeler house where they split the proceeds among themselves and with Defendant Cornell.[8] (Luis Rosa Testimony, 29:24-35-15, [Doc. #271])

The Government also presented the testimony of Greensboro Police Officer Justin Flynt, who responded to a larceny call at a Food Lion grocery store in March of 2007. Officer Flynt testified that upon arrival at the Food Lion, he was informed that a person, identified as Ernesto Wilson, had been detained for leaving the store with a full cart of groceries without paying. Officer Flynt observed Defendant Cornell at the store speaking animatedly with a store clerk, and offering to pay for the groceries in exchange for the store not pressing any charges.

---

[7] Other testimony at trial revealed that Defendant Cornell's ex-wife, Alana Cornell, worked at Cornerstone Insurance Company for a period of time.

[8] According to law enforcement testimony throughout the trial, the crimes described herein were committed on the following dates: Cornerstone Insurance Company breaking and entering--March 24, 2007; Xpress Laundry robbery--April 11, 2007; Musica Latina robbery--April 12, 2007; $2.50 Cleaners robbery--April 18, 2007; and El Tarahumara robbery--April 21, 2007.

However, Defendant Cornell denied knowing Defendant Wilson at that time. Officer Flynt also observed two other individuals near Defendant Cornell who were wearing gold and black beaded necklaces, a symbol of the Latin Kings. After the store opted not to press charges, and Defendant Cornell paid for the groceries, Officer Flynt observed Defendant Wilson load the groceries into a car in which Officer Flynt observed the two individuals wearing gold and black beaded necklaces he had previously seen in the store. Defendant Cornell left in a separate vehicle.

Although multiple witnesses testified that Defendant Wilson was not a crown-holding member of the Latin Kings, in that he did not have a King name, he did not wear the colors or emblems associated with the Latin Kings, and he did not attend the official meetings, Anthony Vasquez also testified that certain trusted individuals were permitted to associate with the Latin Kings even though those persons were not members. From the evidence presented at trial, a reasonable jury could find that Defendant Wilson was one such trusted individual who lived in the same home as Latin Kings, who planned and committed a series of criminal acts with Latin Kings, who attempted to steal groceries with Latin Kings, and who split the proceeds of those crimes with Latin Kings, including their leader, Defendant Cornell. Based on all of the evidence, a reasonable jury could find that Defendant Wilson was an associate in fact of the Latin Kings and that he joined the RICO conspiracy alleged in Count 1 of the Superseding Indictment, that is, Defendant Wilson joined a conspiracy to conduct or participate in the affairs of the Latin Kings enterprise through a pattern of racketeering activity. Therefore, the Court concludes that the Government presented sufficient evidence from which a jury could render

a guilty verdict against Defendant Wilson.  As such, the Court will deny Defendant Wilson's Second Motion for Judgment of Acquittal.

IV.    CONCLUSION

For the reasons set forth above, IT IS ORDERED that the Motion for New Trial [Doc. #301] filed by Defendants Jorge Cornell, Russell Kilfoil, and Ernesto Wilson is hereby DENIED.  IT IS FURTHER ORDERED that the Second Motion for Judgment of Acquittal [Doc. #311] filed by Defendant Ernesto Wilson is hereby DENIED.

This the 1st day of May, 2013.

_United States District Judge_